NOT FOR PUBLICATION	(Docket Entry No. 25)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                                :
LARRY GLENN PERSON, SR. and     :
BOBBIE ANN PERSON,              :
                                :
        Plaintiffs,             :   Civil No. 02-3808 (RBK)
                                :
    v.                          :   OPINION
                                :
WILLINGBORO TOWNSHIP, et al.,   :
                                :
        Defendants.             :
_____ :
```

**KUGLER**, United States District Judge:

Following two altercations with the police at his Willingboro home on May 17, 2001 and February 2, 2002, plaintiff Larry Glenn Person, Sr.[1] brought various claims against Willingboro Township, the Willingboro Township Police Department, and Patrol Officers James Zarzaca, William Smith, and William Spanier. On December 10, 2004, this Court entered summary judgment in favor of all defendants as to all claims, except for

---

[1] Person's counsel informed this Court by letter dated April 29, 2005 that Person has since passed away. However, because the caption of this case has not yet been amended, this Court will continue to refer to Person as the plaintiff. Cf. Smith v. Whitaker, 160 N.J. 221, 233 (1999) (observing that the New Jersey Survivor's Act, N.J.S.A. § 2A:15-3, "preserves to the decedent's estate any personal cause of action that decedent would have had if he or she had survived").

Person's claims for false arrest, false imprisonment, and excessive force against defendants Zarzaca and Smith. Summary judgment was denied as to those claims because the defendants' motion papers failed to address them. Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (observing that the burden of establishing the nonexistence of a genuine issue of material fact is on the party moving for summary judgment).

Defendants' motion for reargument was denied on January 31, 2005. However, in the interest of judicial economy, this Court invited Zarzaca and Smith to file a second motion for summary judgment as to the remaining claims against them. This matter now comes before the Court upon Defendants' motion for summary judgment[2] on all remaining claims. For the reasons expressed in this opinion, Defendants' motion for summary judgment will be granted.

I.      **FACTUAL BACKGROUND**

Person resided at 10 Country Club Road in Willingboro, New Jersey, for over twenty years. He lived there with his wife,

---

[2] Defendants request "that Summary Judgment be granted in favor of defendant Officers Smith and Zarzaca and dismissing any and all claims asserted against these defendants with prejudice." (Defs.' Mot. 18.) The Court notes that a grant of summary judgment in a defendant's favor as to a particular claim does not result in "dismissal" of that claim, but rather in entry of judgment on that claim in favor of the defendant. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999).

Bobbie Ann Person, and had four adult children.

On February 2, 2002, Officer Zarzaca went to Person's residence with a warrant to arrest Person's son Lee. As he pulled onto the street, Zarzaca saw Lee outside the residence. When Zarzaca reached the end of the driveway, Lee saw him and ran toward the back of the house. Zarzaca saw Lee enter Person's residence through a rear sliding glass door.[3]

Zarzaca went to the front door, where he was confronted by Person. Person, who was carrying a cane and was in poor health, asked Zarzaca who he was looking for. At this point in the story, the parties' version of the events changes.

### A. PERSON'S VERSION

Zarzaca told Person that he was looking for Lee, and that he had seen Lee go into the house. (Person Dep. 78:23-24.) Person, who did not know that Lee was inside, told Zarzaca that

---

[3] In his response to Defendants' statement of undisputed facts, Person "specifically denies" that Zarzaca saw Lee enter the home through the rear sliding glass door. (Person's Resp. Stmt. Facts ¶ 10.) However, a mere denial does not "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e).

Zarzaca testified that as he looked through a front window, he saw Lee enter the house through the sliding glass door. (Zarzaca Dep. 59:7-12, Dec. 18, 2003.) The record contains no admissible evidence that Lee entered the house through any other means of ingress. (See Op. at 12, Dec. 10, 2004.) Because only admissible evidence is properly considered upon motion for summary judgment, see Blackburn v. United Postal Serv., Inc., 179 F.3d 81, 85 (3d Cir. 1999), it is undisputed on the record before this Court that Zarzaca saw Lee enter Person's residence through the rear sliding glass door.

Lee was not there and attempted to close the door.  (Id. 79:20-22, 80:12-14.)  Zarzaca pushed the door open, knocking Person—who was on the other side of the door—to the ground.  (Id. 79:22-23, 83:2-9.)  Though his body had been positioned behind the door, Person did not intend thereby to prevent the police from entering his house.  (Id. 89:11-14.0

Zarzaca entered the house and began to direct other police officers inside.  (Person Dep. 81:9-15.)  Person, who was wearing only underwear, asked Zarzaca if the police had a warrant.  (Id. 82:7-8, 92:17-18.)  Zarzaca, who did have a warrant, said only that the police didn't need one.  (Zarzaca Dep. 49:21-23; Person Dep. 82:14-16.)  At that point in time, but no other, Person "probably" used "foul and abusive" language toward the officers and told them to get out of his house.  (Person Dep. 86:3-21.)  At no point did Person put his hands on any officer.  (Id. 87:10-12.)

Zarzaca walked down the hall and began to search a closet.  (Person Dep. 87:17-21.)  Person followed Zarzaca, stood in front of a bedroom door near the closet, and asked Zarzaca what he was looking for.  (Id. 88:5-9, 89:17-25.)  In positioning his body in front of the door, Person did not intend to prevent Zarzaca from entering the bedroom.  (Id. 89:6-14.)  However, Zarzaca "jumped up crazily" and told Person that he was under arrest for obstruction.  (Id. 89:25-90:1.)  Zarzaca pulled Person

4

down to the floor, put his knee across Person's body, and handcuffed him. (Id. 90:7-9.)

Person, who had an injured foot, was unable to walk following his arrest. (Person Dep. 92:22-23.) Along with another officer, Zarzaca dragged Person out of the house and placed him in a police car. (Id. 93:11-22.) These events caused Person emotional distress, from which Person suffered severe hypertension. (Pl.'s Ex. B.)

### B. ZARZACA'S VERSION

Zarzaca told Person that he had a warrant for Lee's arrest, and that he had seen Lee enter the house. (Zarzaca Dep. 62:16-18.) Person, who was "screaming" and "very irate," told Zarzaca to "[g]et the fuck out" and called Zarzaca a "white SOB." (Id. 62:19-20.) Zarzaca repeated several times that he had a warrant for Lee's arrest and that he had seen Lee enter the house. (Id. 62:21-23.) Person tried to slam the door in Zarzaca's face, but Zarzaca put his foot in the door and began to push it open. (Id. 62:23-25.) Person grabbed Zarzaca and tried to push him away, tearing the shoulder of Zarzaca's shirt in the process. (Id. 63:1-3, 66:18-21.)

Zarzaca entered the house and walked down a hallway, followed side-by-side by Person, who delivered a "constant barrage" of racial slurs and curses. (Zarzaca Dep. 71:11-18.) As Zarzaca reached for a doorknob, Person "smacked his hand

5

away." (Id. 72:6-8.) Zarzaca, feeling that "enough is enough," told Person he was under arrest. (Id. 72:4-14.)

Zarzaca grabbed Person's wrist to handcuff him. (Zarzaca Dep. 72:20-21.) Person "fell to his knees" and "tried to play feeble, like he couldn't stand anymore." (Id. 72:21-24.) Along with another officer, Zarzaca dragged Person out of the house and placed him in a police car. (Person Dep. 93:11-22.) Person suffered superficial abrasions to his left knee, left flank, left instep, and right knee in the process. (Defs.' Ex. R.)

**II.     ANALYSIS**

    **A.     SUMMARY JUDGMENT STANDARD**

Summary judgment is only appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. That party must satisfy a burden of

6

production, which "requires the moving party to make a prima facie showing that it is entitled to summary judgment." Id. at 331. Where the burden of persuasion at trial would be on the nonmoving party, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id.

If the moving party has not fully discharged its initial burden of production, its motion for summary judgment must be denied. Celotex, 477 U.S. at 332. If the moving party satisfies its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. OFFICER SMITH

Smith argues that he is entitled to summary judgment because the record contains no evidence that he was involved in Person's arrest and no evidence that he used force against Person.[4] (Defs.' Br. 15-16.) Person responds that Smith "was

---

[4] The record contains no evidence to support Person's "allegation" (see Pl.'s Opp. 10) that Smith "assisted Zarzaca in physically dragging plaintiff from his residence." Therefore, there is no genuine issue as to whether Smith was personally involved in Person's arrest or personally used force against Person. See Fed. R. Civ. P. 56(e).

7

present during the incident and should have known the arrest should not have occurred." (Pl.'s Opp. 10.)  Moreover, says Person, Smith "also should have known the force employed thereafter to be unreasonable as well." (Id.)

Although Smith was present at 10 Country Club Road during the events of February 2, 2002, Person points to no facts that tend to show Smith "should have known" about Person's arrest or the force used against Person.  Moreover, even if the facts could support a finding that Smith should have known about the arrest and/or force, Person cites no law for the proposition that a police officer who merely should know that another officer will commit an unlawful arrest or use excessive force is thereby subject to liability under section 1983.  Cf. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 911 (3d Cir. 1997) ("[M]erely negligent acts cannot support a claim under the state-created danger theory of § 1983."); Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997) (affirming summary judgment on § 1983 claim in favor of defendant police officer where record contained no evidence that defendant knew of and acquiesced in subordinates' unconstitutional actions).  For these reasons, summary judgment will be entered in favor of Smith as to all remaining claims.

### C.   OFFICER ZARZACA

Zarzaca argues that summary judgment ought to be granted in his favor because he is entitled to qualified

immunity.

In determining whether Zarzaca is entitled to qualified immunity, this Court must first decide whether the facts alleged, taken in the light most favorable to Person,[5] show that Zarzaca's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts show the violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. A right is clearly established where the "contours" of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

### 1. **False Arrest and False Imprisonment**[6]

"[A] warrantless arrest by a law officer is reasonable

---

[5] This Court must view the factual record and all reasonable inferences to be made therefrom in the light most favorable to Person, the party opposing summary judgment. See McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). In doing so, this Court may not make determinations of credibility. See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).

[6] Person has previously admitted that he is not pursuing state law tort claims in addition to his constitutional claims. (See Pl.'s Opp. Summ. J. at 14, May 5, 2004 ("[E]ach and every aspect of this complaint is founded upon a constitutional guarantee.").) Therefore, this Court will treat the claim as one for unlawful arrest, and detention subsequent to that unlawful arrest, under section 1983 and the Fourth Amendment. Cf. Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").

under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). Probable cause exists where those facts are "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." See Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); see Sharrar, 128 F.3d at 817-18. Therefore, Person has made out a constitutional violation "if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause to arrest." See Sharrar, 128 F.3d at 818.

Zarzaca argues that the facts demonstrate probable cause to arrest Person under a New Jersey law that provides:

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

N.J.S.A. § 2C:29-1(a). A defendant may be convicted of obstruction under this provision where he curses at police and

refuses to follow police instructions as the officers attempt to make an arrest.  See State v. Hernandez, 338 N.J. Super. 317, 323 (App. Div. 2001).

Even under Person's version of events, he "probably" used "foul and abusive" language toward police officers and twice positioned himself between Zarzaca and a door as Zarzaca attempted to arrest Lee.  Under these facts, particularly in light of Hernandez, Zarzaca could reasonably conclude that Person was violating section 2C:29-1(a).  Because Zarzaca therefore had probable cause to arrest Person for obstruction, Person has not made out a constitutional violation and Zarzaca is entitled to qualified immunity for the arrest on that basis.  Cf. Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005) (analyzing constitutional issue as first step of the qualified immunity analysis).

Moreover, even assuming a jury could permissibly find that no probable cause existed, and therefore that the arrest of Person was unconstitutional, Zarzaca is entitled to qualified immunity because the right was not clearly established.  See Saucier, 533 U.S. at 201.  At the time Person was arrested for obstruction, he had already positioned himself such that the police could not open the front door without pushing him or knocking him down.  He had already used foul and abusive language toward the police.  Under these facts, Zarzaca could reasonably

11

conclude that Person had positioned himself in front of the bedroom door to prevent Zarzaca from entering the bedroom to look for Lee, and could therefore reasonably conclude that he had probable cause to arrest Person for obstruction under section 2C:29-1(a).  Because Zarzaca could reasonably believe that probable cause existed, Person's right not to be arrested was not clearly established.  Therefore, Zarzaca is entitled to qualified immunity for the arrest under either step of the qualified immunity analysis.

### 2. Excessive Force

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  See Graham v. Connor, 490 U.S. 386, 388 (1989).  Thus, although "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest," Groman, 47 F.3d at 634, the force used must be reasonable.

"[E]ach case alleging excessive force must be evaluated under the totality of the circumstances."  Sharrar, 128 F.3d at 822.  "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight."  Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) (citing Graham, 490 U.S. at

12

396).  The court may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Id. at 777 (citing Sharrar, 128 F.3d at 822).  The presence and extent of physical injury to the plaintiff is also relevant.  See Sharrar, 128 F.3d at 822.

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' is constitutionally unreasonable."  Sharrar, 128 F.3d at 821 (quoting Graham, 490 U.S. at 396).  "Rather, 'the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments——in circumstances that are tense, uncertain, and rapidly evolving——about the amount of force that is necessary in a particular situation.'"  Id. (quoting Graham, 490 U.S. at 396-97).

Viewing these facts in the light most favorable to Person, this Court cannot hold that the amount of force used by Zarzaca was objectively reasonable as a matter of law.  Therefore, Zarzaca is not entitled to qualified immunity under the first step of the analysis.  However, as stated above, a reasonable officer could have believed that Person was committing

13

obstruction, and thus could have believed that Person would not comply if told to turn around and place his hands behind his back. Therefore, it would not have been clear to a reasonable officer that pulling Person to the floor and placing a knee on Person's back in order to handcuff him would be an unreasonable use of force. Moreover, given that Person had been walking with no apparent difficulty before the arrest, a reasonable officer could have believed that Person was malingering when he later refused to walk. Therefore, it would not have been clear to a reasonable officer that dragging Person outside to a squad car in a manner that caused Person to suffer only superficial abrasions[7] would be an unreasonable use of force.[8]

---

[7] Citing his own Exhibit B, Person argues that he was hospitalized for five days following the events of February 2, 2002, and that his physician "causally related" the hospitalization to the incident. (Pl.'s Opp. 9.)

Exhibit B, dated October 30, 2003, is a medical report authored by Gary Neil Goldstein, M.D. Dr. Goldstein reported that he had reviewed Person's medical records, and that the "severe hypertension" for which Person was hospitalized was "due to emotional issues related to the 2/2/02 incident." However, this evidence tends to show only that Person was upset, not that the force used by Zarzaca was excessive.

[8] The present case is distinguishable from the cases cited by Person.

In DeGraff v. Dist. of Columbia, 120 F.3d 298 (D.C. Cir. 1997), the record contained "virtually no clues" as to why the police picked the plaintiff up off the ground, carried her horizontally, causing pain, and handcuffed her to a mailbox. Id. at 302. Here, the record provides a contextual background for Zarzaca's use of force. See supra pp. 13-14.

(continued...)

Because it would not have been clear to a reasonable officer that the amount of force Zarzaca used against Person was unreasonable, Person's right was not "clearly established." Therefore, Zarzaca is entitled to qualified immunity on the excessive force claim.

**III.      CONCLUSION**

Summary judgment will be entered in favor of Zarzaca and Smith as to all claims remaining in this case.  The accompanying Order shall issue today.

Dated:    August 25, 2005                /s/ Robert B. Kugler
                                         ROBERT B. KUGLER
                                         United States District Judge

---

[8](...continued)

The court in Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341 (1st Cir. 1995), did not discuss qualified immunity in the context of an excessive force claim.  Id. at 353 n.10.  Thus, that case did not address the question at issue here.

In Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004), the court could not decide whether the defendants were entitled to qualified immunity without deciding disputed issues of fact. Id. at 201.  Here, Zarzaca is entitled to qualified immunity under either party's version of events.